**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL DORSEY, JR., | ) CASE NO.    4:20 CR 312 |
| Petitioner, | ) JUDGE DONALD C. NUGENT |
| v. | ) |
| UNITED STATES OF AMERICA, | ) MEMORANDUM OPINION |
| Respondent. | ) AND ORDER |

This matter comes before the Court upon Petitioner, Michael Dorsey, Jr.'s

("Petitioner's") Amended  Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28

U.S.C. § 2255.  (ECF #67).   The Government filed a Response in Opposition to Petitioner's

Motion.  (ECF #74).  Mr. Dorsey did not file a timely Reply.

**PROCEDURAL AND FACTUAL BACKGROUND**

On January 26, 2023, Mr. Dorsey pled guilty to a four-count indictment, without a written

plea agreement.  (ECF #21).  The presentence investigation concluded that his total offense level

was 35, and he had a Criminal History category III, resulting in an advisory Guidelines range of

210-262 months.  (ECF #25).  This calculation included the imposition of a two-level

enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance, and a two level enhancement for possession of a dangerous weapon under U.S.S.G. §2D1.1(b)(1).  (ECF #25).  Mr. Dorsey's attorney filed a sentencing memorandum objecting to the two enhancements.  (ECF #27, PageID 99).   The Court initially overruled the objections finding that the total of offense level of 35, and criminal history category III were correct, and acknowledged that the advisory Guideline range would be 210-262 months.

However, based on argument made on Mr. Dorsey's behalf at sentencing, the Court varied downward to a total offense level 31.  (ECF #35, PageID 152).  Specifically, the Court cited Mr. Dorsey's potential and prior accomplishments during his schooling, his family situation, the abuse he suffered as a child, his acceptance of responsibility, and positive changes he had manifested since his arrest, and since becoming a father.  Based on the revised total offense level, the Court found that the appropriate sentence was 135 months, the low end of the revised guideline range of 135-168 months.  (ECF #35, PageID 148-154; ECF #29).  The sentence was issued on May 9, 2023.

On August 30, 2023, Mr. Dorsey filed a *pro se* motion for delayed appeal.  He claimed excusable neglect based on his contention that he had asked his trial attorney to appeal the sentence.  He filed a *pro se* notice of appeal the following day.  (ECF #33).  On September 22, 2023, his trial attorney filed a motion to withdraw as counsel.  (ECF #36).  The motion asserted that Mr. Dorsey had never requested that the attorney file a notice of appeal, and that he could not "comprehend or contemplate any basis for appeal." (Id., PageID 156).  The Court granted the motion in a non-document entry dated September 22, 2023.

On October 2, 2023, the Court denied Mr. Dorsey's motion for delayed appeal finding

2

that he had failed to timely notify the Court that he was unable to commuicate with his attorney or file a pro se notice of appeal within the time prescribed by Fed.R.Crim.P. 4(b)(4).  (ECF #38, PageID 164).  Further, the Court held that even if the technical requirements of the rule had been met, Mr. Dorsey had not established good cause or excusable neglect for a delay of approximately 99 days beyond the appeals deadline.  (Id., PageID 165).

Mr. Dorsey first filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. §2255 on May 13, 2024.  (EF #47).  This motion was filed while his appeal was still pending in the Sixth Circuit Court of Appeals, Case No. 23-3727.  The Court stayed the motion pending a determination by the Sixth Circuit.  (ECF #53).  On October 3, 2025, the Sixth Circuit dismissed the appeal as untimely.  (ECF #66).  On December 1, 2025, Mr. Dorsey filed the pending Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255. (ECF #67).  The Government filed an Opposition to the Motion, however, it conceded that he was entitled to an evidentiary hearing on his claim that his trial attorney was ineffective for failing to timely file a notice of appeal.  (ECF #74, PageID 299-304).  The Court held an evidentiary hearing on this issue on June 9, 2026.

## LEGAL STANDARD

A petitioner that moves to vacate, set aside or correct a sentence pursuant to 28 U.S.C. §2255 must demonstrate that:  (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) it is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255.  In order to obtain relief under § 2255, petitioners must

3

prove by a preponderance of the evidence that their constitutional rights were denied or infringed. *United States v. Brown*, 957 F.2d 679, 690 (6th Cir. 2020). As such, a court may grant relief under § 2255 only if a petitioner has demonstrated "a fundamental defect which inherently results in a complete miscarriage of justice." *Id.* (internal quotation and citation omitted). Relief cannot be granted for alleged errors that could have been reached by a direct appeal. *Stone v. Powell*, 428 U.S. 465, 477 (1076). To "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). "Once the defendant's chance to appeal has been waived or exhausted. . . we are entitled to presume he stands fairly and finally convicted." *Id.* at 164. If a § 2255 motion, as well as the files and records of the case, conclusively show that the petitioner is entitled to no relief, then the court need not grant a hearing on the motion. *See* 28 U.S.C. § 2255; *see also Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (recognizing that evidentiary hearing is not required when the record conclusively shows that petitioner is not entitled to relief).

## ANALYSIS

Petitioner's motion asserts four grounds,[1] two of which are dependent upon an allegation of ineffective assistance of counsel, and two of which allege that the Court erred by failing to properly explain or communicate its rulings

A. Ineffective Assistance of Counsel

Mr. Dorsey claims his counsel was ineffective for the following reasons:

---

[1]Although the §2255 form lists only two grounds, the explanation pages attached to the form flush out four separate claims for relief. The Court will refer to each ground separately in the order they are argued in the support materials.

4

(1)      counsel failed to file a timely notice;

(2)      counsel did not object to the two-level enhancement under U.S.S.G. §2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance;

In order to prevail on an ineffective assistance of counsel claim, Petitioner must show that his counsel's performance was deficient, and that the deficient performance prejudiced him to the extent that his conviction was unfair and the result was unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment." *Id.* Judicial scrutiny of counsel's performance must be "highly deferential." *Id.* at 689.

In order to establish that an attorney's representation was deficient, a petitioner must identify specific acts or omissions which he claims rose to the level of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687. The petitioner must then show that these acts or omissions caused counsel's representation to fall "below an objective standard of reasonableness." *Id.* at 687-88. The prosecution has no duty to prove that defense counsel's strategy was actually reasonable, rather the petitioner bears the burden of proving that the presumption is not warranted. *Id.* at 690.

When reviewing allegations of ineffective assistance, effectiveness should be measured by "prevailing professional norms, " not best practices or most common custom. *See, Harrington v. Richter,* 562 U.S. 86, 105 (2011)(quoting *Strickland,* 466 U.S. at 690)*; see, also, Rompilla v. Beard,* 545 U.S. 374, 380 (2005). The court's inquiry must consider the

circumstances and perspectives of counsel at the time of the alleged error, and should not take place in a vacuum or with the benefit of hindsight. *See, Strickland,* 466 U.S. at 688-89. Judicial scrutiny of counsel's performance "must be highly deferential," indulging "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689. Courts should not second guess strategical decisions. "Counsel may exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment." *Lewis v. Alexander,* 11 F.3d 1349, 1353-54 (6th Cir. 1993).

"The Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable or constitutional claim." *Engle v. Isaac,* 456 U.S. 107, 134 (1982). Further, attorneys have no duty to pursue frivolous arguments. *Jalowiec v. Bradshaw,* 657 F.3d 293, 321-22 (6th Cir. 2011).

In addition to proving deficiency, Mr. Dorsey will have to show that his counsel's errors prejudiced the outcome of his trial. An error by counsel, "even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691. Counsel is only ineffective under the Constitution if their performance was prejudicial to the defense. *Id.* at 692. It is insufficient to show that counsel's errors had "some conceivable effect on the outcome of the proceeding," rather, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Sixth Circuit has defined "reasonable probability" as that level of certainty which would lead the court to believe

that the defendant lost "what he otherwise probably would have won," or "that defeat was snatched from the hands of probable victory." *United States v. Morrown*, 977 F.2d 222, 229 (6th cir. 1992).

None of the allegations made by Mr. Dorsey establish ineffective assistance of counsel, or otherwise deprived him of a constitutional right.

1. Ground One: Failure to File a Notice of Appeal

Mr. Dorsey was sentenced on May 9, 2023. (ECF #29). His notice of appeal would have been due fourteen days later, by May 13, 2020. Fed.R.App.P. 4. On August 30, 2023, approximately 113 days after sentencing, Mr. Dorsey filed a pro se motion for delayed appeal; and the next day filed a notice of appeal. (ECF #32, 33). As ground for the request, he stated that, on the day of sentencing, he had asked his counsel if he was "going to file my appeal," and that his counsel had said "yes." (ECF #32). On September 22, 2023, his trial counsel filed a motion to withdraw as counsel, noting that he had never been asked to file a notice of appeal, and that he could not "comprehend or contemplate any basis for appeal." (ECF #36). Due to this discrepancy between the statements of Mr. Dorsey and his counsel, the Court held an evidentiary hearing on June 9, 2023, hearing testimony from both parties.

Mr. Dorsey claimed in his request for delayed appeal that at unspecified times after his sentencing hearing he had his girlfriend call counsel's office "more than fifteen times" to ask about the appeal, and for two weeks they did not get any response. After the two weeks, he states that it was "now going on 90 days or so" and the secretary advised him to contact the public defender's office  This would suggest that the calls to counsel did not take place until more than seventy days after sentencing and more than fifty-six days after his notice of appeal was due. He

does not indicate whether he followed up and actually called the public defender's office.  His request for delayed appeal was not filed for at least another twenty days afer he was advised to call the public defender's office.

Mr. Dorsey affirms in his §2255 motion that he requested a notice of appeal be filed on the day of sentencing, and that counsel agreed to file one.  He indicates that after he was designated at a Bureau of Prisons ("BOP") facility, he began trying to contact counsel to follow up about the appeal, and after being unable to reach counsel, he contacted the clerk of courts and discovered that no notice of appeal had been filed.  He did not provide dates or timelines for any of these events.

At the June 9, 2026 hearing, almost three years after the request for delayed appeal was filed, Mr. Dorsey testified once again that he asked counsel file a notice of appeal immediately following the sentencing hearing.  At first he did not clearly state that counsel responded saying he would file the notice of appeal, or that they could appeal on the basis of the enhancement, rather he referred to a statement counsel made during the sentencing hearing indicating that they could appeal the purity of the drugs.  (June 9, 2026 hearing, rough transcript, page 4).  However, he later stated that counsel "just said he'd file it," and told him "good luck."  (Id. page 5).  He also testified that he found out no appeal had been filed from the BOP, and that is what triggered him to file the late Notice of Appeal.  (Id.).  He stated he arrived in the BOP on May 30, 2023, and that both he and his girlfriend  repeatedly tried to call counsel from that date through August of 2023, though he attested that when he said he called for two weeks in his motion for delayed appeal, that this was correct.  (Id. At 7-8).  He also stated that he must have called the public defender's office "because I needed to get my appeal," but he had no specific recollection of

calling, of when he would have called, or what was discussed. (Id. at 8-9).

Mr. Dorsey's counsel, Kevin Spellacy, also testified at the hearing. He testified that the objection to the maintenance of a premises enhancement that Mr. Dorsey now claims would be the basis of his appeal was not a strong case, and would not have had merit on appeal. (Id. at 15). He also states that regardless, if Mr. Dorsey had asked him to appeal, he would have filed a notice of appeal and/or withdrawn from the case because he did not believe that an appeal was warranted. The veracity of this statement is bolstered by the fact that once Mr. Dorsey did file a pro se notice of appeal, Mr. Spellacy sought to withdraw from the case because he could not continue to represent Mr. Dorsey on what he believed to be a meritless appeal. (Id. at 15-16). He did not recall getting any phone calls from Mr. Dorsey or his girlfriend prior to August of 2023. This recollection was supported by a search of messages taken and forwarded to him by his office, which showed no messages except for one from Mr. Dorsey on August 22, 2023, and one from his girlfriend on September 11, 2023. Upon finding out that he had filed a pro se notice of appeal during the September phone call, Mr. Spellacy sought to be removed from the case. (Id. at 16-17).

On cross examination, Mr. Spellacy reaffirmed that he had no record or recollection of any calls prior to the August 22, 2023 call from Mr. Dorsey.[2] This timing would line up with Mr.

---

[2] Also during cross examination, Mr. Dorsey focused again on arguments about purity rather than asking whether he had explicitly asked for an appeal on the basis of the enhancement that was the focus his ineffective assistance claim in this §2255 motion. Even when asking about the purity argument, Mr. Dorsey acknowledged that he deferred to his counsel's approach to arguing the case and did not claim to have pushed him to pursue this line of argument. In the end, his counsel's strategic decision to focus on mitigating factors was successful and achieved a full four level reduction in his total offense level, whereas the challenged enhancement, even if successful, would have only garnered a two level reduction.

Dorsey's original statement in his Motion for Delayed Appeal in which he indicated that he and his girlfriend called over a span of two weeks, approximately "90 days or so" after sentencing, or after the appeal date had passed.

To be entitled to relief on this factual issue, Mr. Dorsey bears the burden of proving his version of events by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th cir. 2006). The evidence presented at the hearing, paired with the statements made by Mr. Dorsey in his earlier filings, made at a time when his memory would have been clearer, favor a finding that, Mr. Dorsey did not explicitly ask counsel to file an appeal immediately following his sentencing. Although Dorsey and his counsel may have discussed potential appeal issues prior to and during the sentencing hearing, the testimony does not support a finding that a clear and timely request was made to file a Notice of Appeal after sentencing. Further, the evidence and earlier statements made by Mr. Dorsey in his Motion for Delayed Appeal support a finding that Mr. Dorsey and his girlfriend did not contact Mr. Spellacy about an appeal until sometime in August, well after the period for filing a Notice of Appeal had expired. Therefore, Mr. Dorsey has not met his burden of proving facts, by a preponderance of the evidence, that would support his claim for ineffective assistance of counsel, for failure to file a timely notice of appeal.

2. <u>Ground Two: Failure to Object to Enhancement</u>

Mr. Dorsey contends that his counsel was ineffective for failing to properly object to the imposition of a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance. Mr. Dorsey's argument is belied by the fact that his counsel did object to the imposition of this enhancement. The objection, which included detailed factual arguments as to why the enhancement was not warranted, was contained in

sentencing memorandum filed by counsel on his behalf. (ECF #27, PageID 99).

Mr. Dorsey recognizes that the issue was raised in the sentencing memorandum; however, he complains that counsel did not formally raise the issue as an objection to the Presentence Investigation Report ("PSR"), and did not re-raise the issue on the record during the sentencing hearing. Mr. Dorsey's counsel was not ineffective for repeating the objection or challenging the Court to make detailed findings on this issue. The Court indicated that it had read and considered the arguments made in the Sentencing Memorandum filed by Dorsey's counsel, and counsel was not ineffective for repeating or belaboring the argument during the hearing once the Court had indicated that it had been considered. (ECF #35, PageID140).

Further, even if counsel could have raised the objection to the enhancement in an objection to the PSR, or re-stated the objection on the record at the sentencing hearing, the failure to do so did not prejudice Mr. Dorsey. The Court indicated on the record that it considered all arguments made in the Sentencing Memorandum, which included the objection to the enhancement. Further, the point of the objection was to attempt to lower the total offense level by two levels, and reduce the advisory sentencing guideline range. Mr. Dorsey's counsel accomplished this by presenting a myriad of arguments, including the argument against the enhancement, to convince the Court that a lower sentence was sufficient but not greater than necessary to serve justice under the specific circumstances of Mr. Dorsey's case. There is no reason to believe that had counsel repeated the arguments already before and considered by the Court that it would have resulted in an even a lower sentence.

The Court considered all of the arguments when coming to the determination that a downward variance was warranted. The combination of factors, including the factual arguments

that could have weighed against the enhancement, supported the resulting four-level reduction. The decision by counsel to focus on the totality of the circumstances, achieved a result that benefitted Mr. Dorsey more than the elimination of the enhancement alone could have achieved. This was a viable, and ultimately successful strategy on the part of counsel, and Judicial scrutiny of counsel's performance "must be highly deferential," and should be "considered sound trial strategy." *Strickland*, 466 U.S. at 689. Courts should not second guess strategical decisions. "Counsel may exercise his professional judgment with respect to the viability of certain defenses . . . without running afoul of the Sixth Amendment." *Lewis v. Alexander*, 11 F.3d 1349, 1353-54 (6th Cir. 1993).

### B. Alleged Court Error

#### 1. Sufficiency of Factual Analysis at Sentencing

Mr. Dorsey argues that his due process rights were violated at sentencing because the Court did not explicitly rule on his objection to the imposition of a two level enhancement for maintaining a premises for the purpose of manufacturing or distributing drugs. Mr. Dorsey's total offense level would have been a level 35 had the enhancement been applied. Rather, based on all of the arguments and objections raised by Mr. Dorsey's counsel at sentencing, the Court varied downward to a total offense level of 31. This was a four level departure that exceeded the benefit Mr. Dorsey requested based on his arguments against the application of the enhancement. During the hearing, the Court referenced all of the objections and other considerations that led it to this final determination. Included in those considerations were all arguments raised in the Defendant's Sentencing Memorandum, including the objections to both enhancements, as well as the Defendant's person character, remorse, acceptance of responsibility, potential for and history

12

of hardwork and success, and his difficult and abusive upbringing.  The Court also weighed the seriousness of the offense, the harm his behavior caused the community, and all other §3355 factors.

The Court is not required to cite any specific language or to specifically detail its findings on every issue affecting the final sentencing determination.  *United States v. Sweeney*, 891 F.3d 232, 239 (6th Cir. 2018).  While the "appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances . . [t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority." *Rita v. United States*, 551 U.S. 338, 356 (2007).

The Court conducted a meaningful sentencing hearing and fairly articulated the considerations and reasoning behind its ultimate sentencing decision.  The remedy sought by Mr. Dorsey, a reduction in the total offense level set forth in the PSI, was granted, even if the Court did not explicitly adopt his arguments with regard to the sentencing enhancements.  The Court considered the §3355(a) factors, as required, and properly exercised its discretion in selecting a sentence that was sufficient, but not greater than necessary to meet the ends of justice.

### 2. Imposition of Standard Conditions of Supervised Release

District courts must alert defendants orally at sentencing when imposing the standard conditions of supervised release. *See, United States v. Hayden*, 102 F.4th 368, 373-74 (6th Cir. 2024).  However, there is no requirement that they read each condition aloud from the bench during the sentencing hearing.  Rather, posting standard conditions in general order or in a presentence investigation report, and then referencing the general or standard conditions during

13

the hearing is sufficient.   In other words, referencing a discoverable set of standard conditions satisfies a defendant's due process by notifying them of the conditions that will be included in the judgment, and allowing them sufficient notice to argue for changes.  *See, e.g., United States v. Tullock*, 380 F.3d 8, 13-14, n. 8 (1st Cir. 2004)(per curium); *United States v. Diggles*, 957 F.3d 551, 561 (5th Cir. 2020)(en banc); *United States v. Bonanno*, 146 F.3d 502, 512 (7th cir. 1998); *United States v. Monytoya*, 82 F.4th 640, 651-52 (9th Cir. 2023); *United States v. Truscello*, 168 F.3d 61, 64 (2d Cir. 1999).

The standard conditions of supervised release were set forth in Mr. Dorsey's final PSR. (ECF #25, PageID86-90).  The Court incorporated by reference at the sentencing hearing, stating: "[W]hile you are on supervised release, you have to follow all of the terms and conditions everyone follows on supervised release, which includes, in your case any kind of mental health or drug treatment." (ECF #35, PageID 152-53).  Mr. Dorsey and his counsel both had access to the PSR and were, therefore, on notice of the terms and conditions that the Court was referencing at the hearing.  They, therefore, had adequate opportunity to clarify or to challenge the imposition of any conditions that they objected to.  *United States v. Drapeau*, 644 F.3d 646, 657 (8th cir. 2011).  The Court provided an opportunity for Mr. Dorsey and his counsel to offer objections and his counsel confirmed that they had no objections.  The general incorporation of the standard conditions of supervised release did not, therefore, violate Mr. Dorsey's constitutional right to due process.

As Mr. Dorsey has failed to meet his burden of proving by a preponderance of the evidence that there has been a violation of his constitutional rights or that his sentence is otherwise subject to collateral attack, the Motion to Vacate, Set Aside, or Correct Sentence (ECF

14

#67) is DENIED.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of appealability as to any of the claims presented in the Petition. 28 U.S.C. § 2253 provides, in part, as follows:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In order to make "substantial showing" of the denial of a constitutional right, as required under 28 U.S.C. § 2255(c)(2), a habeas prisoner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issue presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).)

Where a district court has rejected the constitutional claims on the merits, the petitioner must demonstrate only that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484.

15

## CONCLUSION

For the reasons stated above, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right, or that his sentence is otherwise subject to collateral attack. Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF #67), is, therefore,  DENIED.  Further, the Court declines to issue a certificate of appealability

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: _June 30, 2026_

16